UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROY AUSTIN SMITH,<br><br>Plaintiff,<br><br>v.<br><br>DAWN BUSS, et al.,<br><br>Defendants. | CAUSE NO. 3:21-CV-613-JD-MGG |

OPINION AND ORDER

Roy Austin Smith, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In his complaint, Smith asserts that following the January 20, 2021, murder of a correctional officer at the Indiana State Prison, Commissioner Robert E. Carter and Superintendent Ron Neal implemented a number of changes at the prison. ECF 1 at 3-4. He first alleges that Carter and Neal ordered the fluorescent lighting fixture in his cell be removed and replaced with a "naked, exposed 60 watt light bulb." *Id*. at 4. Smith claims the removal of the fluorescent lighting fixture from his cell violated his Eighth

Amendment rights because a federal court decided forty-five or fifty years ago that a prisoner's exposure to a 60-watt light bulb, when it was the only source of light in a cell, was harmful to a prisoner's eyes. *Id*. He claims the decision resulted in the prison being required to replace the 60-watt light bulbs with florescent lighting fixtures in the prisoners' cells. *Id*.

Inmates are entitled to adequate lighting. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). They may not be subjected to a "significant amount of time in near total darkness." *Hicks v. Lannoye*, No. 20-CV-505, 2021 WL 2454050, at *3 (E.D. Wisc. June 16, 2011) (collecting cases). Nor may they be subjected to continuous bright lighting that impacts their ability to sleep. *See Mejia v. Pfister*, 988 F.3d 415, 418 (7th Cir. 2021). Here, it is clear from the complaint that Smith is being provided lighting in his cell. It is not clear, however, whether he is claiming the lights are too dim or too bright. It appears he does not like the 60-watt light bulb that is being used, but this type of minor discomfort does not trigger Eighth Amendment concerns. There is also nothing in the complaint to suggest he cannot mitigate the discomfort by periodically closing or covering his eyes. *See Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) (no Eighth Amendment violation where inmates subjected to continuous lighting were permitted to cover their eyes with towels). Furthermore, to the extent Smith claims there is prior precedent to support his contention that an exposed 60-watt light bulb in a prison cell violates his Eighth Amendment rights, he has not provided a citation to the precedent and the court has not been able to find such a case. Thus, he has not alleged a plausible constitutional claim in connection with the lighting.

Smith asserts that another change implemented by Carter and Neal was the removal of his metal storage and writing cabinet from his cell. ECF 1 at 4. He states he used the cabinet as a writing surface when he composed his legal documents. *Id*. Smith complains that he now has to either lie on the floor to write or stand up and use the walls as a writing surface. *Id*. at 5. At times, he has even had to take the mattress off of his bunk and use the bunk's flat surface as a writing surface. *Id*. Smith asserts that Carter and Neal violated his First Amendment right to access the courts because he no longer has an appropriate writing surface to prepare his legal documents. *Id*.

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition the courts and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)).

To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S.

3

343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Here, it cannot plausibly be inferred that the removal of Smith's metal storage and writing cabinet from his cell prejudiced his ability to pursue a potentially meritorious legal claim. Thus, he cannot proceed on this claim.[1]

Smith further asserts that the removal of his metal storage and writing cabinet violated his Eighth Amendment rights because he was forced to use awkward writing positions which caused him to have aches and pains in his arms, back, legs, and neck. ECF 1 at 5. A violation of the Eighth Amendment's Cruel and Unusual Punishment Clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's state of mind was one of deliberate indifference to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[N]ot all prison conditions trigger eighth amendment scrutiny—only deprivations of basic

---

[1] Smith also asserts that the defendants violated his First Amendment right to access the courts when they placed him in the disciplinary and administrative segregation units. ECF 1 at 10. However, he has not alleged any specific facts to support that claim.

4

human needs like food, medical care, sanitation, and physical safety." *James v. Milwaukee Cty.*, 956 F.2d 696, 699 (7th Cir. 1992). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Thus, "conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations." *Pegues v. Rogers*, No. 3:07-CV-93 PS, 2007 WL 951896, at *1 (N.D. Ind. Mar. 27, 2007).

    The Eighth Amendment does not entitle Smith to specific pieces of furniture, even if he would prefer to have these items. Furthermore, he states that these changes were made because of the recent murder of a correctional officer at his facility, and the court must afford deference to prison officials regarding what items may be kept in an inmate's cell in light of safety and security considerations. *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (holding that prison officials must be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). Thus, he has not alleged a plausible constitutional claim related to the furnishings in his cell.

    Smith next alleges that, during a facility shakedown, correctional officers took his personal property—including legal documents—that did not fit in his opened-faced metal property box. ECF 1 at 6. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ." But, a state tort claims act that provides a method by which a person can seek

5

reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Even the destruction of legal materials is merely a property loss if the papers are replaceable. *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir. 1987) (holding that, where no actual or probable detriment was alleged, destruction of legal papers did not constitute a deprivation of meaningful access to the courts and "the Due Process Clause of the Fourteenth Amendment does not furnish appellant with a basis for suit under § 1983 because a constitutionally adequate state tort claims act provides appellant with a suitable nonconstitutional remedy."). Furthermore, legal papers are not deemed irreplaceable merely because there is a cost associated with obtaining them. Therefore, the taking of Smith's property does not state a claim.

While Smith asserts he had nothing to do with the murder of the correctional officer, on June 18, 2021, Deputy Superintendent Dawn Buss ordered that he be moved

6

from his cell in general population and housed in cell 205—a stripped down bare cell—in the D-East disciplinary segregation unit. ECF 1 at 6, 11. After being moved to cell 205, he complained to prison staff about the move because he had not been charged with or found guilty of any disciplinary rule violation. *Id.* at 6-7. On June 25, 2021, Smith was moved to cell 308, another stripped down bare cell, in the administrative segregation unit. *Id.* at 7. He was housed in the administrative segregation unit until July 20, 2021. *Id.* at 15.

While he was housed in the disciplinary and administrative segregation units, he contends that Carter, Neal, and Buss violated a number of his constitutional rights. ECF 1 at 10. He initially asserts they violated his Eighth Amendment rights because he was subjected to inhumane conditions. *Id.* at 10, 16. Smith states that when he was initially placed in the disciplinary segregation unit, he was only allowed to have a one-piece jumpsuit, one t-shirt, one pair of boxer shorts, one pair of socks, one pair of boots, his tablet, and a tablet charger. *Id.* at 6, 15. He was not permitted to have soap, a towel, a washcloth, a spoon, a cup, a toothbrush, toothpaste, deodorant, a razor, shower shoes, and toilet paper. *Id.* When he was moved to the administrative segregation unit, he was allowed to keep his same personal clothing items and he was also given a sleeping mat, sheet, steel bunk, steel toilet, and steel shelf. *Id.* at 7-8. However, he was still not allowed to have personal hygiene items, a bowl, or his personal property. *Id.*

Besides the limitations on his personal and hygiene items, Smith complains that his cell in the disciplinary segregation unit was very dirty as it had not been swept out or cleaned in months. ECF 1 at 14. He states the toilet and sink were also caked with

7

accumulated crud and grime, and he was not given a toilet brush, disinfectant, or cleaning supplies to clean the cell. *Id*. While he was housed in both the disciplinary and segregated units, he was only given a two ounce paper cup of liquid soap every three days to use for showering and he had no shower shoes, towel, or washcloth. *Id*. at 16. Because he did not have a towel, he had to use his only pair of socks to wash and dry himself. *Id*. Smith states he either had to take showers barefoot on a filthy, moldy floor where twenty to twenty-five other inmates had used the shower before him or by placing plastic bags that his breakfast and dinner meals were served in over his feet. *Id*. at 16-17. Because the shower floors were unsanitary, he contracted a foot fungus and was prescribed an antifungal cream. *Id*. at 17. The fungus spread to Smith's groin area and upper body and ultimately caused an ear infection. *Id*. at 17-18. He was prescribed penicillin for a double ear infection and still suffers from constant ringing in his ears from the infection. *Id*. at 18. Smith asserts that because he did not have a bowl or spoon, he had to use the Styrofoam tray lid from his lunch meal as a bowl to mix his cereal and milk with his fingers and scoop the cereal from the tray lid using his hands. *Id*. at 19. He lost thirty-five pounds while he was housed in the two units and was too weak to move his personal property back to his cell in general population when he was released from administrative segregation on July 20, 2021. *Id*.

While his allegations are concerning, Smith has not alleged that Carter, Neal, or Buss were personally involved or knew about the inhumane conditions in the two units. *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003) (A § 1983 suit requires "personal involvement in the alleged constitutional deprivation to support a viable claim."). There

8

is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Because the defendants were not personally involved in the alleged conditions, they cannot be held liable simply because they oversee the operation of the prison. However, even if Smith had named the person responsible for the alleged conditions, he has not pled facts which suggest deliberate indifference because "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012).

Smith further claims that the defendants violated his Fourteenth Amendment rights because he was assigned to the disciplinary and administrative segregation units even though he had never been charged with or convicted of any disciplinary violation or prison rule. ECF 1 at 10. As stated, "[p]rison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer*, 682 F.3d at 679. Due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."). While Smith was unhappy with his placement in the disciplinary and administrative segregation units, he has not alleged a change in classification that is either an "atypical" or "significant" hardship in relation to the ordinary incidents of prison life. Thus, he may not proceed on this claim.

Lastly, Smith claims that Buss placed him in the disciplinary and administrative segregation units because she has a personal vendetta against him. ECF 1 at 10-12. He explains that in 2004, as a result of Smith's alleged admission that a high ranking gang member inmate had given him contraband during a urine test, that inmate was convicted of a disciplinary offense and lost his parole out date. *Id*. at 12. He asserts Buss gave the inmate a copy of a document that showed Smith had snitched on the inmate. *Id*. However, Smith states he later gave the inmate another document that proved Buss was not telling the truth. *Id*. Here, Smith has not plausibly alleged facts from which it can be inferred that there is a connection between Buss placing him in the segregated units from June 18, 2021 through July 20, 2021, and events that occurred seventeen years earlier related to the inmate being disciplined. Therefore, Smith may not proceed on this claim.

While Smith's complaint does not state a claim, the court will give him an opportunity to replead, if after reviewing this order, he believes he can state a claim. *Luevano v. WalMart Stores, Inc.*, 722 F.3d 1014, 1022-23, 1025 (7th Cir. 2013); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). When Smith prepares his amended complaint, he should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing as much detail as possible.

For these reasons, the court:

(1) DIRECTS the clerk to place this cause number on a blank Prisoner Complaint Pro Se 14 (INND Rev. 2/20) and send it to Roy Austin Smith;

(2) GRANTS Roy Austin Smith until **January 20, 2022**, to file an amended complaint on that form; and

(3) CAUTIONS Roy Austin Smith that if he does not respond by that deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim.

SO ORDERED on December 28, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT