UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROY AUSTIN SMITH, <br><br> Plaintiff, <br><br> v. <br><br> DAWN BUSS, ROBERT E. CARTER, and RON NEAL, <br><br> Defendants. | CAUSE NO. 3:21-CV-613-JD-MGG |

OPINION AND ORDER

Roy Austin Smith, a prisoner without a lawyer, filed a sprawling complaint against Robert E. Carter, the Commissioner of the Indiana Department of Correction; Ron Neal, the Warden of Indiana State Prison; and Dawn Buss, a Deputy Warden of Indiana State Prison that contained a variety of claims that were related only by virtue of the fact that he alleged the same defendants were responsible for the alleged violations. ECF 1; *see George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . .."). In a detailed order, the court examined each of his claims and concluded that none of them stated a claim for relief. ECF 9. Specifically, the court concluded Smith did not state a constitutional claim based on the prison replacing the fluorescent lighting fixture in his cell with an exposed 60-watt light bulb; the removal from his cell of the metal storage and writing cabinet, leaving him

with no horizontal surface to write on; the confiscation of his personal property, including legal documents; and his month-long placement without a hearing in disciplinary and administrative segregation. ECF 9 at 2-7, 9-10.

The court, however, expressed concern about alleged conditions in the segregation units that caused Smith to contract a foot fungus that spread to his groin, upper body, and ears and conditions that caused him to lose 35 pounds in the month he was in segregation. ECF 9 at 8. Assuming those conditions crossed the line from "harsh and uncomfortable" to inhumane, the court concluded there was no indication that the IDOC Commissioner, the Warden, or the Deputy Warden were personally involved in or knew about the conditions in the cell. *Id.* Thus, the court concluded the complaint did not state a claim against them. *Id.*

Smith was given the opportunity to file an amended complaint if, after reviewing the court's screening order, he believed he could state a claim. ECF 9 at 10. He has done so, and now the court must review the merits of that complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

The amended complaint sues the same defendants—the IDOC Commissioner, the Warden, and the Deputy Warden—and does not cure the problems identified in the

2

first complaint. The allegations regarding the furniture removed from his cell, the confiscation of personal property, and his month-long placement in segregation without a hearing are materially unchanged, so the court will not rehash those claims. But Smith adds in new allegations concerning his lighting claim, so the court will address that particular claim.

Smith attempts to challenge the change in his cell from a fluorescent light fixture to an exposed, unshielded 60-watt light bulb. In the screening order, the court concluded that, although the Eighth Amendment protects inmates from both a "significant amount of time in near total darkness" and from "continuous bright lighting that impacts their ability to sleep," there was no precedent that found the use of an exposed 60-watt light bulb in a prison cell was an automatic violation of the Eighth Amendment. ECF 9 at 2. Smith alleges in his amended complaint that he has contacted light bulb manufacturers and optometrists for their views on whether it is harmful to a person's eyes for the prison to use a bare, 60-watt light bulb in a 6x10x8 prison cell. ECF 22 at 2. As he is awaiting their responses, he asserts that the court must accept as true that the use of such lighting is categorically harmful to eyes and therefore the practice must be stopped. *Id.*

The court must accept as true only *well-pleaded* factual allegations. *Luevano v. WalMart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). Thus, the court will accept as true Smith's allegations that *he* suffered from severe headaches, spotted and blurred vision, and difficulty reading that he attributes to the change in lighting. ECF 22 at 2. But it goes too far and defies common sense to assume that the use of 60-watt light

3

bulbs in all cases constitutes an Eight Amendment violation. To survive dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). But "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012); *see also Bono v. Saxbe*, 620 F.2d 609, 613 (7th Cir. 1980) (concluding conditions in prison segregation unit, which included light provided by a 40- or 60-watt light bulb, did not violate the Eighth Amendment). Smith was told the minor discomfort he experiences from the lighting did not trigger Eighth Amendment concerns and there was "nothing in the complaint to suggest he cannot mitigate the discomfort by periodically closing or covering his eyes." ECF 9 at 2. His amended complaint does not change that determination.

In turning to the allegations concerning the conditions in the segregation units, Smith also fails to remedy the problems identified in the screening order—namely that he did not plausibly allege that the IDOC Commissioner, the Warden, or the Deputy Warden were aware of the conditions in the segregation units. The screening order advised Smith that "[a] § 1983 suit requires personal involvement in the alleged constitutional deprivation to support a viable claim," and he "has not alleged that Carter, Neal, or Buss were personally involved or knew about the inhumane conditions

4

in the two units." ECF 9 at 8 (quotation marks omitted). In the amended complaint, Smith keeps the substance of the allegations the same but simply adds in that "Defendants" denied him his personal property, "Defendants" placed him on the prison's restricted commissary list, "Defendants" ordered that he be confined in a stripped cell, "Defendants" instructed the correctional officers not to give him anything other than his daily food rations, and so on. ECF 22 at 10-14. It is implausible that the IDOC Commissioner, the Warden, and a Deputy Warden would all be involved in such a granular level of Smith's incarceration.

Finally, in the relief section of the complaint, many of Smith's requests ask the court to order that the prison to make changes to the policies applicable to the administration segregation unit, namely that the inmates in administrative segregation who have not been found guilty of a conduct report at a hearing be allowed the same privileges as those in the general population. A claim for injunctive relief need not allege the personal involvement of a particular defendant; instead, a claim for injunctive relief requires only that a court "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (quotation marks and brackets omitted).

However, the Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir.

5

2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486). Therefore, it does not automatically violate the constitution to impose restrictions on inmates in administrative segregation. And though conditions in a particular unit may be inhumane enough to constitute an Eighth Amendment violation requiring injunctive relief, Smith is no longer in segregation subject to those conditions. *See Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Thus, he does not state a claim for injunctive relief.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Here, Smith has already been given the chance to fix the problems identified in the first complaint, but he persisted in making the same claims against the same defendants. The court sees no reason to believe a second attempt would go any differently.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED on September 21, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT